[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13140

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 3, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-61202-CV-JAL

PAUL DOMBROWSKI,

Petitioner-Appellant,

versus

TIMOTHY MINGO, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 3, 2008)**

Before BIRCH, FAY and CUDAHY,[*] Circuit Judges.

BIRCH, Circuit Judge:

_____

[*] Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

In this case, we review a pro se petition by Petitioner-Appellant, Paul Dombrowski, for a writ of habeas corpus under 28 U.S.C. § 2254. We consider whether a Florida state sentencing court was required to advise Dombrowski of his right against self-incrimination before soliciting his admission to prior convictions for sentencing enhancement purposes. The United States District Court for the Southern District of Florida denied Dombrowski's § 2254 petition but issued a certificate of appealability ("COA") as to the Fifth Amendment issue. We conclude that Dombrowski's petition was correctly denied and so AFFIRM the judgment of the district court.

## I. BACKGROUND

A. Florida State Trial Court Proceedings

On 25 August 1995, Dombrowski was charged by information with one count each of burglary of a dwelling and grand theft. Before he pled guilty to the offenses underlying his § 2254 petition, the state filed notice of its intent to request that Dombrowski be sentenced as an habitual offender. At the original plea hearing on 30 October 1995, the state trial court informed Dombrowski that by pleading guilty, he was giving up the right to testify and to remain silent. Dombrowski stated that he understood this consequence, and the court accepted his open plea for burglary and grand theft.

2

The sentencing hearing occurred on 8 December 1995. At its outset, the state requested a continuance of two weeks in order to collect certified copies of Dombrowski's "numerous convictions ... outside of the state of Florida and multiple jurisdictions." R1-13, Exh. BB (Supp.) at 3. The sentencing court then stated that Dombrowski could avoid a delay in sentencing by confirming on the spot that he already had two prior felony convictions. The sentencing court placed the case on recall so that Dombrowski could discuss his options with his defense counsel.

After several additional recalls, defense counsel announced that his client was prepared to be sentenced. The state reiterated its request that Dombrowski be sentenced as an habitual offender and the following exchange then occurred:

> THE COURT: Is Mr. Dombrowski agreeing that on November 7th of 1978 he got five years probation in Hawaii for two counts of Burglary; February 20th, 1981, he was sentenced to four years in prison for burglary and larceny; on February 8th, 1995, he was sentenced to five years in prison in New Jersey for burglary – excuse me, on November 20th of 1986 he was sentenced to six years [in] prison in New Jersey for burglary; July 19th, 1988, he was sentenced to three years in prison in New York for grand larceny; and March 13th of 1992 he was sentenced to five years [in] prison in New Jersey for burglary?
>
> DOMBROWSKI: Yes, sir.
>
> THE COURT: And the Defense stipulates that he hasn't received any pardon or post conviction relief or anything to set aside any of those convictions?

3

DEFENSE COUNSEL: Yes, Judge.

R1-13, Exh. BB at 7-8. The court then inquired whether Dombrowski "had any legal cause to show why [the] sentence should not be imposed[.]" Id. at 10. Dombrowski's counsel stated that there was none. Finally, when the court asked Dombrowski whether he had anything to add, Dombrowski replied, "[Defense counsel] Mr. Cotrone said it all, Your Honor." Id. Dombrowski was then sentenced as an habitual felony offender to fifteen years for the burglary and ten years for the grand theft, the sentences to run concurrently.

B. Subsequent Procedural History

On 4 September 1997, Dombrowski filed a state petition for a writ of habeas corpus, seeking a belated appeal of his sentence. It was granted on 12 January 1997, and he subsequently filed an initial brief, raising the issue at bar, among others. Dombrowski's sentence was affirmed by the Florida District Court of Appeals ("DCA") without written opinion.

In April 2001, Dombrowski filed a second petition for a state writ of habeas corpus, this time claiming ineffective assistance of counsel on his initial belated appeal. This petition was denied by the Florida DCA on 3 May 2001.[1]

---

[1] Between April of 2000 and October of 2001, Dombrowski filed a series of motions for post-conviction relief and to correct illegal sentence with the state trial court. In each case, the trial court denied relief and the Florida DCA affirmed.

On 4 April 2000, Dombrowski filed a motion in state court for post-conviction relief,

On 28 August 2002, Dombrowski filed a federal habeas corpus petition with the United States District Court for the Southern District of Florida. A magistrate judge issued a report and recommended that Dombrowski's petition be denied. The district court adopted the magistrate's report and recommendation but made several findings of its own. The district court concluded that the magistrate judge misconstrued Dombrowski's Fifth Amendment claim as an ineffective assistance of counsel claim when, in fact, Dombrowski was asserting that the state sentencing judge, rather than his defense counsel, failed to ensure that Dombrowski voluntarily waived his right against self-incrimination before asking about his prior convictions.

The district court also determined that although Dombrowski had a Fifth Amendment right not to testify about his prior convictions at his sentencing hearing, Dombrowski's response to the sentencing court about his prior convictions was not barred by the Fifth Amendment, as it constituted a volunteered statement that Dombrowski was not compelled to make. Dombrowski then filed a

raising two additional claims outside the scope of our inquiry. The trial court denied relief and the Florida DCA affirmed.

On 21 February 2001, Dombrowski filed a motion to correct illegal sentence with the state court, arguing that Florida's habitual offender statute is unconstitutional. The trial court once again denied relief and that result was also affirmed by the Florida DCA without written opinion.

On 8 October 2001, Dombrowski filed another motion to correct illegal sentence based on the contention that the sentencing court lacked jurisdiction. Once again, relief was denied by the trial court with the result affirmed by the Florida DCA.

motion with the district court for a COA on his Fifth Amendment claim. Dombrowski also filed a motion asking the district court for relief from its denial of his § 2254 petition. The district court denied his motion for relief, but issued a COA for Dombrowski's Fifth Amendment claim.

We now consider whether the district court erred in denying Dombrowski's § 2254 petition in which a Florida state sentencing court did not advise Dombrowski of his right against self-incrimination before soliciting his admission to prior convictions for sentencing enhancement purposes.

## II. DISCUSSION

"When reviewing a district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact <u>de novo</u>, and findings of fact for clear error." <u>Nyland v. Moore</u>, 216 F.3d 1264, 1266 (11th Cir. 2000) (per curiam). The AEDPA significantly restricts the ability of the federal courts to grant habeas corpus relief.[2] It provides, in part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[2] Because Dombrowski filed his § 2254 petition after 24 April 1996, the <u>Anti-Terrorism and Effective Death Penalty Act of 1996</u> ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies in this case.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Because the factual findings of the state court proceeding are not contested in this case, we consider only the operation of § 2254(d)(1).

A. Legal Landscape

1. "Clearly Established Law" Requirement

The Supreme Court has addressed the application of § 2254(d) in some detail. See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (1999). In Williams, the Court addressed the "clearly established law" requirement of § 2254(d)(1) before turning to the "contrary to, or an unreasonable application of," requirement. Id. at 379, 120 S. Ct. at 1505-06. The Williams Court highlighted the importance of the clause immediately following the "clearly established law" requirement, "limiting the area of relevant law to that 'determined by the Supreme Court of the United States.'" Id. at 381, 120 S. Ct. at 1506 (quoting 28 U.S.C. § 2254(d)(1)). The Court then held that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA

7

bar." Id., 120 S. Ct. at 1506-07. In Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1499), the Supreme Court subsequently held that the "clearly established law" requirement "refers to holdings, as opposed to dicta, of [the] ... Court's decisions as of the time of the relevant state-court decision."

We have held that the "clearly established law" requirement of § 2254(d)(1) does not include the law of the lower federal courts. See Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). Moreover, when no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be "contrary to clearly established Federal law as determined by the U.S. Supreme Court." Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

2. "Contrary to, or an Unreasonable Application of," Requirement

It is well established in our circuit that a state court decision can be "contrary to" clearly established federal law "if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman, 268 F.3d at 1241. As regards the "unreasonable application" prong, we have held that "[a] state court conducts an 'unreasonable application' of clearly established federal

8

law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case ... [or] a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

B. Analysis

In this case, Dombrowski has pointed to no Supreme Court precedent specifically requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes or to advise a defendant of his Fifth Amendment rights before hearing such an admission, and we have found none. Dombrowski urges us to construe the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), as clearly established federal law guaranteeing his Fifth Amendment right not to testify at his sentencing hearing about his prior convictions. Although the district court agreed that Miranda did afford Dombrowski such a right, we are not persuaded.[3]

_____

[3] The district court's determination hinged on Miranda's holding that "the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." Miranda, 384 U.S. at 467, 86 S. Ct. at 1624. The district court ultimately concluded that Dombrowski's admission of his prior convictions constituted a volunteered statement as defined in Miranda and so the state court's prior determinations were not contrary to, or an unreasonable application of, clearly established federal law.

There is no consensus amongst the lower federal courts that have addressed this issue. In Government of Virgin Islands v. George, 741 F.2d 643, 649 (3rd Cir. 1984), the Third Circuit held that prior to inquiring about previous convictions during habitual offender enhancement proceedings, "the court must personally address the defendant and determine that he understands the consequences of such an admission and must also determine, before accepting such an admission, that such admission is voluntary." See also Cox v. Hutto, 589 F.2d 394, 395-96 (8th Cir. 1979) (per curiam) (holding that a stipulation to prior offenses was the functional equivalent of a guilty plea); Wright v. Craven, 461 F.2d 1109 (9th Cir. 1972) (per curiam) (holding the same). In contrast, the Fifth Circuit determined that to the extent that the rule that a guilty plea must be entered knowingly and voluntarily analogously applied to a multiple offender proceeding, it was satisfied where the sentencing court only asked "direct, fact-specific questions, answered with the advise of counsel." Joseph v. Butler, 838 F.2d 786, 791 (5th Cir. 1988). Likewise, the Tenth Circuit rejected the rule that the admission of a prior conviction in an enhancement proceeding is the functional equivalent of a guilty plea requiring a court inquiry into voluntariness. Johnson v. Cowley, 40 F.3d 341, 346 (10th Cir. 1994) (holding that the "full panoply of criminal trial procedural rights" did not apply in an enhancement proceeding, and that harmless error

10

analysis should apply to situations in which the defendant did not object to his counsel's stipulation to the prior conviction or claim that he was innocent of the same).

We conclude that there is no clearly established federal law requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes or to advise a defendant of his Fifth Amendment rights before hearing such an admission. As such, we adhere to our previous decisions in Washington and Isaacs in which we held that "where no Supreme Court precedent is on point, we cannot say that the state court's conclusion ... is contrary to clearly established Federal law as determined by the U.S. Supreme Court." Isaacs, 300 F.3d at 1252 (citation omitted); Washington, 324 F.3d at 1265.

In so deciding, we are mindful of the Supreme Court's reminder that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." Williams, 529 U.S. at 382, 120 S. Ct. at 1507. We are convinced, however, that Dombrowski's Fifth Amendment argument in this case does not rise to the level of a generalized standard, let alone a bright-line rule. We note the wide disparity in opinion amongst our sister circuits on the issue before us and the lack of Supreme Court

precedent directly on point. The <u>Williams</u> Court explained that "[w]here the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that if forges a new rule, one not dictated by precedent." <u>Id.</u> (quoting <u>Wright v. West</u>, 505 U.S. 277, 308-09, 112 S. Ct. 2482 (1992)). We are satisfied that such a case is not now before us.

## III. CONCLUSION

Dombrowski appeals the district court's denial of his § 2254 petition, arguing that a Florida state sentencing court was required to advise him of his right against self-incrimination before soliciting his admission to prior convictions for sentencing enhancement purposes. We conclude that clearly established federal law in the form of Supreme Court precedent currently does not afford Dombrowski such a right. As such, Dombrowski's § 2254 petition was correctly denied by the district court.

**AFFIRMED.**