[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12976

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-01465-CV-ORL-KRS

GEORGE PORTER, JR.,

Petitioner-Appellee,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondents-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 18, 2008)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

The Attorney General of Florida and the Secretary of the Department of Corrections of Florida ("State") appeal the district court's grant of George Porter, Jr.'s petition for federal habeas corpus relief. Porter was sentenced to death for the 1986 murder of Evelyn Williams, his former live-in lover. After exhausting his state post-conviction remedies, Porter filed, pursuant to 28 U.S.C. § 2254, a petition for a writ of habeas corpus in the Middle District of Florida. The district court granted habeas relief as to Porter's claims of ineffective assistance of counsel at his November 30, 1987 competency hearing and at the penalty phase of his trial. After thoroughly reviewing the record and the parties' briefs and having the benefit of oral argument, we reverse and enter judgment for the State.

## I. BACKGROUND

*A. The Crimes*

In 1985, Porter moved in with Williams in Melbourne, Florida. Their relationship was stormy almost from the beginning. Their relationship was aggravated by the hostility between Williams' children and Porter, especially Williams' daughter, Amber.

Porter and Williams' relationship ended in July 1986, after Porter damaged Williams' car and threatened to kill both Williams and Amber. Porter left Melbourne shortly after the relationship ended. Meanwhile, Williams began a new relationship with Walter Burrows.

Porter returned to Melbourne in early October 1986. When he returned, he contacted Williams' mother, Lora Mae Meyer. He told Meyer that he had a gift for Williams. Meyer responded that Williams did not want to see him anymore. But Porter persisted. He was seen driving past Williams' house each of the two days before the murders.

A few days before the murders, Porter suggested to his friend Nancy Sherwood that she would read about him in the paper. Porter also visited Dennis Gardner, another friend, and asked to use Gardner's Jennings semi-automatic pistol. Gardner refused to loan Porter the pistol. The pistol later disappeared from Gardner's home.

Porter visited Williams on October 8, 1986, the day before the murders. Williams called the police because she was afraid of him. Later that evening, Porter went to two cocktail lounges. He spent the night with his friend Lawrence Jury.

Amber awoke to the sound of gunshots the next morning, October 9, 1986, at 5:30 A.M. She saw Porter standing over her mother's body. Amber testified that Porter approached her, pointed a gun to her head, and said, "boom, boom, you're going to die." Burrows then entered the room, struggled with Porter, and forced him outside. Amber meanwhile called for help.

3

Williams' son John, who lived nearby, also heard gunshots that morning. John ran outside and saw Burrows lying face down in the front lawn. Both Burrows and Williams were dead by the time the police arrived. They were killed by shots from a Jennings semi-automatic pistol.

*B. Trial*

*1. Guilt Phase*

Porter was charged with two counts of murder and one count each of armed robbery and aggravated assault. He pleaded not guilty to all four charges. He was initially represented by the public defender, who withdrew in March 1987 because of a conflict. After Sam Bardwell,[1] a private criminal defense attorney, was appointed to represent Porter, Porter asked the court for permission to represent himself at trial.[2] The court granted Porter's request, apparently after conducting a *Faretta* inquiry.[3] The court also designated Bardwell as standby counsel.

---

[1]Bardwell formerly served as an assistant state attorney. He was, at the time of Porter's trial, an experienced private criminal defense attorney who took conflict cases from the public defender.

[2]The record does not contain a transcript of any proceeding during which Porter requested to represent himself. The only pretrial hearings contained in the record are from February 25, 1987, March 13, 1987, November 20, 1987, November 24, 1987, and November 30, 1987. Porter was represented by the public defender at the February and March 1987 hearings. He proceeded *pro se* at the November 1987 hearings.

[3]*Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (holding that a criminal defendant has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so). The record does not contain the court's *Faretta* inquiry before granting Porter's request to proceed *pro se*. However, it appears, based on the court's later statements in the record, that the court determined that Porter was competent to waive his right to counsel. For example, the court noted during Porter's November 30, 1987

4

In early November 1987, the State filed a motion with the court, requesting that Porter be evaluated for competence. The two court-appointed psychiatrists issued separate reports regarding Porter's competency. Both concluded that Porter was competent.

On November 30, 1987, the court gave Porter, who was proceeding *pro se* at that time, copies of the two reports and as much time as he needed to review them. Porter took a few moments to review them. After confirming that Porter reviewed and understood the reports, the court conducted another *Faretta* inquiry. The court again found Porter competent to represent himself at trial.

The court thereafter conducted a hearing regarding Porter's competence to stand trial.[4] Porter also proceeded *pro se* at that hearing. Porter and the State stipulated that the psychiatrists' reports would be received as evidence instead of live testimony. Finding no issue with Porter's competency, the court again determined that Porter was competent to stand trial.

Porter's trial began immediately after the November 30, 1987 competency hearing. Porter abruptly stopped the trial in early December 1987, when the State

competency hearing, "I will probably go through the Faretti [sic] inquiry at least one more time even though we've done it several times in the past."

[4]The Supreme Court has since held that the standard for determining a defendant's competence to waive the right to counsel is not higher than the standard for determining competence to stand trial. *Godinez v. Moran*, 509 U.S. 389, 391, 113 S. Ct. 2680, 2682, 125 L. Ed. 2d 321 (1993).

nearly finished its case-in-chief. Porter announced that he wanted to plead guilty to the murder charges and no contest to the other two charges. When the court sought the factual basis for Porter's request, Porter denied that he killed Williams, but stated that he may have killed Burrows.

The court refused to accept Porter's pleas on those bases. After consulting standby counsel, Porter told the court that he would plead guilty to all four charges, but that he did not want to provide a factual basis for those pleas. The court then extensively inquired into whether the pleas were voluntary. The prosecutor subsequently presented the factual basis supporting guilt. The court accepted Porter's guilty pleas to all four counts. In admitting his guilt, Porter said that he changed his pleas "[b]ecause [he] want[ed] to get it over with."

### 2. Penalty Phase

Bardwell, who had been serving as guilt-phase standby counsel, became Porter's "full" counsel for the penalty phase. Although Bardwell was an experienced criminal defense attorney, Porter's penalty phase trial was the first that he had handled as a defense attorney. Bardwell tried to present two witnesses in mitigation: Patricia Porter, Porter's ex-wife, and Lawrence Jury, Porter's invalid neighbor. Bardwell presented a "Dr. Jekyll-Mr. Hyde" theory. According to Bardwell's theory, whenever Porter drank alcohol, Mr. Hyde came out, and Porter could not control his temper or actions.

Patricia testified that Porter was a good father and that his relationship with their son was good. But her testimony did not support Bardwell's theory. She testified that Porter's behavior did not change when he drank alcohol.

Bardwell next tried to present Jury's testimony. Jury, however, did not appear, likely because he could not get a ride to the courthouse. After being granted a delay, Bardwell read a portion of Jury's deposition testimony into the record. Jury's testimony supported Bardwell's theory.

After hearing the State's case in aggravation and Porter's case in mitigation, the jury unanimously recommended a death sentence for Williams' murder and, by a 10-2 vote, a death sentence for Burrows' murder. The court found that four aggravating factors applied in Williams' murder: (1) "[t]he defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person," FLA. STAT. § 921.141(5)(b); (2) "[t]he capital felony was committed while the defendant was engaged . . . [in] burglary," § 921.141(5)(d); (3) "[t]he capital felony was especially heinous, atrocious, or cruel," § 921.141(5)(h) ("HAC factor"); and (4) "[t]he capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification," § 921.141(5)(i). The court found that only the first two aggravating factors applied in Burrows' murder. In

7

March 1988, the court imposed a death sentence for Williams' murder and a life sentence for Burrows' murder.

*C. Direct Appeal*

In June 1990, the Florida Supreme Court affirmed the convictions and sentences, but struck the HAC factor. *Porter v. State*, 564 So. 2d 1060, 1063 (Fla. 1990) (per curiam). The court found "that Porter's . . . crime . . . was [not] *meant* to be deliberately and extraordinarily painful." *Id.* The U.S. Supreme Court denied certiorari on February 19, 1991. *Porter v. Florida*, 498 U.S. 1110, 111 S. Ct. 1024, 112 L. Ed. 2d 1106 (1991).

*D. State Post-conviction and Habeas Proceedings*

In June 1992, Porter filed, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, a motion for post-conviction relief in the Brevard County Circuit Court. Porter amended his motion several times and raised several issues regarding his competency and the representation provided by Bardwell. Porter argued that the trial court did not "conduct an adequate adversarial competency hearing despite numerous indicia of incompetency and defense counsel's ineffectiveness in failing to advocate the competency issue . . . ." He alleged that "Bardwell, standby defense counsel, was ineffective" because he did not investigate or present evidence during the competency hearing. The post-conviction court ruled that the trial court had thoroughly examined Porter's

8

competency and Porter had knowingly waived his right to counsel and could not complain that standby counsel was ineffective.

Porter also argued that Bardwell acted ineffectively during the penalty phase of the trial by failing to investigate and present evidence of Porter's mental health, abusive childhood, problems with alcohol, or military service. The post-conviction court conducted an evidentiary hearing on the issue whether trial counsel rendered ineffective penalty phase assistance. Porter presented extensive statutory and non-statutory mitigating evidence[5] that trial counsel did not present during the penalty phase.

First, Porter presented evidence of his abusive childhood. He witnessed his father routinely beat his mother, sometimes sending her to the hospital. Among his siblings, Porter was most often the target of his father's rage, which was aggravated by Porter's attempts to protect his mother and his father's daily activity of getting drunk.

Second, Porter presented evidence of his military history. He joined the U.S. Army at about age 16, at the time of the Korean War. He was awarded the National Defense Service Medal for enlisting in a time of conflict, the U.N. Service Medal for serving with U.N. forces in the Korean conflict, the Korean

_____

[5]FLA. STAT. § 921.141(6)(h) (indicating that mitigating circumstances include "any other factors in the defendant's background that would mitigate against imposition of the death penalty").

9

Service Medal with three Bronze Service Stars, the Combat Infantryman's Badge, and two Purple Hearts for being wounded in combat. He was also considered for the Good Conduct Medal and the Korean Presidential Unit Citation. When he left the military, he was given an honorable discharge.

Third, Porter presented the testimony of Dr. Henry Dee, a qualified expert in forensic neuropsychology. Dee testified as to Porter's emotional and mental health. Dee testified that he reviewed records of Porter's history, interviewed him, and administered various accepted psychological tests. He determined that Porter suffered from post-traumatic stress and organic brain syndrome, which could manifest as impulsive, violent acts. He stated that those acts could be caused or aggravated by alcohol use. He concluded that Porter suffered from extreme mental or emotional disturbance at the time of the crimes.[6] He further concluded that Porter's ability to conform to the law at the time was substantially impaired.[7]

The post-conviction court denied relief. The Florida Supreme Court affirmed, in a 5-2 decision, the denial of post-conviction relief. *Porter v. State*, 788 So. 2d 917, 928 (Fla. 2001) (per curiam).[8] The Florida Supreme Court

---

[6]*See* FLA. STAT. § 921.141(6)(b) (recognizing "the influence of extreme mental or emotional disturbance" as a mitigating factor).

[7]*See* FLA. STAT. § 921.141(6)(f) (recognizing substantial impairment of the ability "to conform . . . conduct to the requirements of the law" as a mitigating factor).

[8]Two justices dissented in part, specifically from the majority's conclusion that the trial court properly denied relief based on ineffective assistance of penalty phase counsel. *See generally Porter*, 788 So. 2d at 928–37 (Anstead, J., concurring in part and dissenting in part).

unanimously denied Porter's subsequent state habeas petition. *Porter v. Crosby*, 840 So. 2d 981 (Fla. 2003) (per curiam).[9]

### E. Federal Habeas Proceedings

In October 2003, Porter filed, pursuant to 28 U.S.C. § 2254, a federal habeas petition in the Middle District of Florida. After reviewing Porter's subsequently amended petition, the district court granted habeas relief in June 2007 only as to Porter's claim of ineffective assistance of penalty phase counsel. In October 2007, the district court granted in part Porter's motion to alter or amend on the basis that Porter was constructively denied the assistance of counsel at his competency hearing. The district court denied Porter's application for a certificate of appealability as to all other grounds raised in the petition. Porter thereafter applied for a certificate of appealability in this Court, which was denied. The State now appeals the district court's grant of habeas relief as to Porter's competency hearing and penalty phase claims.

## II. STANDARDS OF REVIEW

Because Porter filed his federal habeas petition after April 24, 1996, his claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996

---

[9]Although only four justices joined the court's per curiam opinion, none of the seven justices voted against denying Porter's state habeas petition. *See Porter*, 840 So. 2d at 986. *See also id.* at 987 (Anstead, C.J., and Shaw, Senior Justice, concurring in result only); *id.* (Pariente, J., concurring in result only with an opinion).

11

("AEDPA"). Under AEDPA's "highly deferential" standard of review, *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003), a federal court may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000) (majority opinion by O'Connor, J.).

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact *de novo,* and findings of fact for clear error." *Grossman v. McDonough*, 466 F.3d 1325, 1335 (11th Cir. 2006). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to *de novo* review." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).

### III. DISCUSSION

The State argues that the district court erred by granting habeas relief as to Porter's claim of ineffective assistance of counsel at the competency hearing and at the penalty phase. We agree. We address each of Porter's claims in turn.

*A. Competency Hearing Claim*

Porter argues that he was constructively denied the assistance of counsel at his November 30, 1987 competency hearing.[10] The state argues that Porter did not exhaust this issue in the state courts. We agree with the state.

---

[10]The Florida Supreme Court did not address Porter's competency hearing claim as a claim of ineffective assistance of counsel. *See Porter*, 788 So. 2d at 926–27. The post-conviction court, however, addressed the claim as follows:

> The Defendant . . . argues that counsel was ineffective for failing to object to the Defendant having to read and evaluate the mental health reports himself and then defend against them. The record reflects that the Defendant knowingly waived his right to counsel and was made aware of the perils of self-representation. . . . The trial court appointed Sam Bardwell for the purpose of giving legal advice when needed. At no time did the Defendant object to this arrangement. Clearly, the Defendant acted as his own attorney. He may not now complain "that his 'co-counsel', provided for the purpose of giving advice upon request, ineffectively 'co-represented' him . . ." Thus, this claim is denied.
>  . . . .
> The Defendant's allegations that counsel was ineffective for failing to pursue mental health experts for the preparation of possible defenses is without merit. The defendant knowingly and voluntarily waived his right to counsel. He "was the architect of his defense at trial." . . . [S]tandby counsel was appointed to provide legal advice upon request. The Defendant cannot now complain that "co-counsel" was ineffective.

*State v. Porter*, No. 86-5546-CF-A, slip op. at 9–10, 13 (18th Jud. Cir. Brevard County July 12, 1995) (citations omitted).

13

Before filing a petition for a writ of habeas corpus, a state prisoner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731, 144 L. Ed. 2d 1 (1999). Exhaustion requires that the petitioner have "raise[d], by any available procedure, the question presented" in the state courts. *Id.* § 2254(c). Exhaustion also requires the petitioner to have "fairly present[ed]" the issue to the state courts. "'It is not sufficient . . . that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made.'" *McNair*, 416 F.3d at 1302. The petitioner must have presented the same "particular legal basis" to the state courts as he argues in his habeas petition. *Id.*

Porter failed to present in the state courts the argument that he had been constructively denied counsel. Porter did not argue in the state courts that he was entitled to counsel at his competency hearing. Instead, Porter argued that his standby counsel provided ineffective assistance at the competency hearing. *See Smith v. Robbins*, 528 U.S. 259, 286, 120 S. Ct. 746, 764–65, 145 L. Ed. 2d 207 (2000) (using the distinction drawn in *Penson v. Ohio*, 488 U.S. 75, 88–89, 109 S. Ct. 346, 354, 102 L. Ed. 2d 300 (1988), between the constructive denial of counsel and ineffective assistance of counsel). If, as the district court concluded, Porter "effectively raise[d]" the issue in his brief to the Florida Supreme Court, that did not exhaust the issue for habeas review. An issue may not be raised for the first

14

time on appeal of a Rule 3.850 motion. *See Hamilton v. State*, 875 So. 2d 586, 593 n.4 (Fla. 2004) (citing *Thompson v. State*, 759 So. 2d 650, 668 n.12 (Fla. 2000)).

Even if Porter had exhausted the issue, the district court erred by applying, contrary to *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), a new rule of law. "Under *Teague* a new rule of criminal procedure generally may not be applied in a federal habeas proceeding where the judgment in question became final before the rule was announced." *Schwab v. Crosby*, 451 F.3d 1308, 1323 (11th Cir. 2006). A new rule "'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'" *Graham v. Collins*, 506 U.S. 461, 467, 113 S. Ct. 892, 897, 122 L. Ed. 2d 260 (1993) (citation omitted). According to ADEPA, federal courts operate within the narrow body of precedent of the Supreme Court. 28 U.S.C. § 2254(d)(1). Based on that limitation, if the Supreme Court "has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381, 120 S. Ct. at 1506–07; *see, e.g.*, *Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[T]he 'clearly established law'

15

requirement of § 2254(d)(1) does not include the law of the lower federal courts.").

The district court erred by concluding that clearly established federal law entitled Porter to counsel at a second competency hearing. The Supreme Court has not held that a court must appoint counsel for a competency hearing after a defendant had been found competent and waived his right to counsel. The district court based its decision on the decisions in *United States v. Purnett*, 910 F.2d 51 (2d Cir. 1990), and *United States v. Klat*, 156 F.3d 1258 (D.C. Cir. 1998), neither of which constitutes clearly established federal law. *See Williams*, 529 U.S. at 381, 120 S. Ct. at 1506–07; *Dombrowski*, 543 F.3d at 1274. These decisions are inapposite because the defendants were allowed to proceed without counsel despite the trial courts' doubts about, and before the courts ever determined, the defendants' competency. *Purnett*, 910 F.2d at 54–56; *Klat*, 156 F.3d at 1263. In contrast, Porter's competency was not in question. The trial court revisited the issue of Porter's competency as a precautionary measure, and counsel did not have to be appointed for this second inquiry. *See United States v. Morrison*, 153 F.3d 34, 45 (2d Cir. 1998) (distinguishing *Purnett*); *Wise v. Bowersox*, 135 F.3d 1197, 1203 (8th Cir. 1998).

Porter has not, and cannot, point to any clearly established federal precedent existing on February 19, 1991, that specifically imposes a duty on standby counsel

16

to advocate for a *pro se* criminal defendant who had been previously found competent to waive the right to counsel. Thus, the district court applied, contrary to *Teague*, a new rule in granting habeas relief as to Porter's competency hearing claim. We reverse.

### B. Penalty Phase Claim

Bardwell became Porter's full counsel for the penalty phase. Porter argues that Bardwell rendered ineffective penalty phase assistance because Bardwell did little, if anything, to rebut the State's case. Porter argues that Bardwell responded to the State's case with minimal mitigating evidence and that additional mitigating evidence was available. Porter further argues that the additional evidence would have significantly affected the jury's sentencing recommendation and the court's ultimate sentencing decision.

We analyze Porter's penalty phase claim under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance, Porter must show "that counsel's representation fell below an objective standard of reasonableness," *id.* at 688, 104 S. Ct. at 2064, and "that the deficient performance prejudiced the defense," *id.* at 687, 104 S. Ct. at 2064. We "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted); *see, e.g.*, *Strickland*,

17

466 U.S. at 697, 104 S. Ct. at 2069; *Rutherford v. Crosby*, 385 F.3d 1300, 1315 (11th Cir. 2004). We find, for the reasons discussed below that counsel's performance was not prejudicial. We accordingly reverse the district court's grant of habeas relief as to Porter's penalty phase claim.

To establish prejudice in a case challenging a death sentence, the court decides "whether there is a reasonable probability that, absent [counsel's unprofessional] errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069. This standard presumes a reasonable sentencer. *Id.* at 695, 104 S. Ct. at 2068 (finding irrelevant "the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency").

In assessing prejudice, the reviewing court considers the totality of the evidence. *Id.* at 696, 104 S. Ct. at 2069. The court "reweigh[s] the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542 (2003). "[The] court . . . must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

On federal habeas review, we presume, when balancing the aggravating and the mitigating factors, the "findings of fact by the state court . . . to be correct." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000). The federal habeas petitioner "must rebut the presumption of correctness by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

The Florida Supreme Court considered the total available evidence in assessing Porter's penalty phase claim. The majority determined, after balancing the mitigating factors against the aggravating factors, that the post-conviction court correctly found that Porter had failed to show prejudice. *Porter*, 788 So. 2d at 925. We address those mitigating and aggravating factors in turn.

### a. Mitigating Factors

#### 1. Alcohol Abuse

The Florida Supreme Court concluded that Porter presented "far from conclusive" evidence of his alcohol abuse. *Id.* at 924. In so concluding, the Florida Supreme Court reiterated the trial court's finding that

> [Porter] was sober the night before the murders and he was sober immediately after the murders. He was able to drive and transact business. There is nothing in the record which would support a finding that this mitigating circumstance exists.

*Id.* (citation omitted). "Given this finding, as well as the conflicting testimony of [Porter]'s siblings," *id.,* the Florida Supreme Court determined that Porter had not

shown prejudice in counsel's presentation of inconclusive testimony as to Porter's alcohol abuse.

### 2. Abusive Childhood

The Florida Supreme Court concluded that "[a]ny presentation of [Porter's abusive childhood] would . . . have been insignificant." *Id.* Porter was about fifty-four years old at the time of trial. Following precedent, the Florida Supreme Court determined that evidence of Porter's abusive childhood would have been given "little, if any, mitigating weight when compared to the aggravating factors" because of the remoteness of time between his childhood and the trial. *Bolender v. Singletary*, 16 F.3d 1547, 1561 (11th Cir. 1994) (rejecting the same claim made by a Florida death row inmate who was twenty-seven years old at the time of the murders). The Florida Supreme Court concluded that Porter had not shown prejudice in counsel's failure to present evidence of Porter's abusive childhood.

### 3. Military History

The Florida Supreme Court concluded that the mitigating effect of Porter's military history "would have [been significantly] reduced" if considered as a whole. *See Porter*, 788 So. 2d at 925. Although Porter served with distinction and received an honorable discharge, he went absent without leave ("AWOL") three times while overseas. When he returned to the United States, he went AWOL again for about a year. For doing so, he received a special court martial, a

20

six-month sentence, and a $50.00 per month fine. *Id.* at 924–25. Because the trial judge and jury would have been presented with evidence of military discipline, the Florida Supreme Court found no prejudice in counsel's failure to present evidence of Porter's military history.

### 4. Emotional and Mental Health

The Florida Supreme Court found that counsel was not ineffective under *Strickland* for failing to present statutory mitigating evidence[11] of Porter's emotional and mental health. *Id.* at 923–24. The post-conviction court "[found] Dr. Dee's testimony to be speculative and not supported by the evidence to a reasonable scientific certainty." *Id.* at 923 (citation omitted). Instead, the court relied on the testimony of Dr. William Riebsame, the State's expert witness. The Florida Supreme Court adopted the post-conviction court's finding, deferring to "the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact." *Id.*

### b. Aggravating Factors

The Florida Supreme Court struck the HAC aggravating factor on Porter's direct appeal, leaving three aggravating factors. *Porter*, 564 So. 2d at 1063. After

---

[11]*See supra* notes 6-7.

Porter appealed the post-conviction court's denial of relief, the Florida Supreme Court balanced the remaining aggravating factors against the mitigating factors.

## 1. Cold, Calculated, and Premeditated[12]

The state trial court found that the "homicide . . . was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." This factor is one "of the most serious aggravators set out in the statutory scheme." *Buzia v. State*, 926 So. 2d 1203, 1216 (Fla. 2006) (per curiam) (citation omitted). The factor applied here because

> [Porter] had made clear his intent to kill Evelyn Williams, and advised her family through three separate phone calls of this intent. . . . Porter previously had threatened to kill Williams and her daughter. He watched Williams' house for two days just before the murders. Apparently he stole a gun from a friend just to kill Williams. [Then] he told another friend that she would be reading about him in the newspaper. While Porter's motivation may have been grounded in passion, it is clear that he contemplated this murder well in advance.

*Porter*, 788 So. 2d at 925 (citations omitted).

## 2. Burglary[13]

The state trial court found that Porter committed the murder while committing a burglary. The court found that

---

[12]FLA. STAT. § 921.141(5)(i).

[13]FLA. STAT. § 921.141(5)(d).

[w]hile armed with a dangerous weapon, [Porter] committed a burglary by entering the residence of Evelyn Williams with intent to commit a crime. This residence was not open to the public and the defendant did not have permission to enter. He was in the home at approximately 5:45 a.m. He then proceeded to shoot and kill Evelyn Williams and Walter Burrows.

### 3. Another Capital or Violent Felony Conviction[14]

The state trial court found that Porter "was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." The factor is "especially weighty" under Florida's statutory sentencing scheme. *Frances v. State*, 970 So. 2d 806, 817 (Fla. 2007) (per curiam) (citation omitted). The factor may apply even if the other felony conviction is a contemporaneous, not prior, conviction. *See Correll v. State*, 523 So. 2d 562, 568 (Fla. 1988) (per curiam). Accordingly, the trial court found that "[t]his aggravating factor applies to both the murder of Evelyn Williams and the murder of Walter Burrows, even though both murder[s] and the aggravated assault of Amber Williams were committed in one episode."

### c. Balancing the Mitigating and Aggravating Factors

The Florida Supreme Court determined that Porter had not met his burden to show prejudice under *Strickland*. *Porter*, 788 So. 2d at 925. The majority found

---

[14]FLA. STAT. § 921.141(5)(b).

that the trial court properly found that the aggravating factors outweighed the mitigating factors, even after striking the HAC factor:

> There is additional postconviction expert testimony regarding mitigation which the trial court found to be entitled to little weight in light of conflicting expert testimony. The trial judge found the additional nonstatutory mitigation to be lacking in weight because of the specific facts presented. Finally, following a full evidentiary hearing, the trial judge determined that the additional mitigators were outweighed by the weighty aggravators of a prior violent felony and a cold, calculated, and premeditated murder. We agree.

*Id.*

The district court rejected the Florida Supreme Court's balancing of the mitigating and aggravating factors. In rebalancing those factors, the district court asserted that "[t]he trial judge correctly characterized two of the aggravators as 'technical' and found both the heightened premeditation and the HAC factors inapplicable to the Burrows murder." *Porter*, 2007 WL 1747316, at *27. The district court further asserted that, after the Florida Supreme Court struck the HAC aggravating factor as to Williams' murder, "the aggravation evidence at trial boiled down to two technical aggravators and heightened premeditation, itself a rather esoteric concept." *Id.* The district court determined that "the balance ha[d] unquestionably shifted away from aggravation." *Id.* at *28.

The district court concluded that "the state courts failed to properly consider the weight of the mitigating evidence." *Id.* The district court apparently found

24

that Porter's sobriety at the time of the murders was irrelevant to the balancing of the factors. *Id.* at \*28 n.30. The court noted that "for a fact to be mitigating, it does not have to be relevant to the crime – any of 'the diverse frailties of humankind,' which might counsel in favor of a sentence less than death are mitigating." *Id.* (citing *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2990, 49 L. Ed. 2d 944 (1976) (plurality opinion)).

The district court further concluded that "the state courts simply chose not to give . . . any weight" to the evidence of Porter's abusive childhood and military history. *Id.* The district court found "no support in the record . . . that the effects of child abuse diminish over time so as to become insignificant by age 54." *Id.* at \*30. It also asserted that "the fact that [Porter] went AWOL while in the military does not necessarily diminish his honorable and distinguished service." *Id.*

The district court, moreover, rejected the Florida Supreme Court's weighing of Porter's mitigating evidence of emotional and mental health. The district court found "no factual support for the [post-conviction] court's conclusion that Dr. Dee's testimony was directly challenged [by Dr. Riebsame] or not worthy of consideration." *Id.* at \*29. The district court suggested that Riebsame, who did not personally examine Porter, may not have contradicted Dee at all. The district court accordingly concluded that "the state court made no credibility findings; rather it simply discounted [the] significance [of Dee's testimony]." *Id.* at \*30.

25

The district court essentially adopted the position taken by the justices who dissented in part from the Florida Supreme Court's decision to affirm the denial of post-conviction relief:

> In short, it is obviously difficult, if not impossible, to have confidence in a sentence that was imposed based upon a one-sided presentation, i.e., unchallenged aggravation and no mitigation, when it is later demonstrated that substantial mitigation exists and one of the most serious aggravators was improperly considered and stricken on appeal. To approve of counsel's default . . . is tantamount to holding that the defendant was not entitled to the benefit of counsel at his penalty phase proceeding.

*Id.* at *31 (quoting *Porter*, 788 So. 2d at 932 (Anstead, J., concurring in part and dissenting in part)). Accordingly, the district court found that counsel's deficient performance was prejudicial under *Strickland.*

The district court recognized that its analysis of Porter's penalty phase claim was subject to AEDPA. *Id.* at *26. The court asserted, however, that AEDPA "does not require district courts to uphold a state court decision simply because a reasonable judge could reach that same conclusion." *Id.* The district court found support in Justice Stevens' opinion in *Williams v. Taylor* for rejecting the Florida Supreme Court's balancing of the aggravating and mitigating factors:

> In sum, the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state

court's judgment, a federal court is convinced that a prisoner's custody – or, as in this case, his sentence of death – violates the Constitution, that independent judgment should prevail. Otherwise the federal "law as determined by the Supreme Court of the United States" might be applied by the federal courts one way in Virginia and another way in California. In light of the well-recognized interest in ensuring that federal courts interpret federal law in a uniform way, we are convinced that Congress did not intend the statute to produce such a result.

*Id.* (citing *Williams*, 529 U.S. at 389–90, 120 S. Ct. at 1511 (opinion of Stevens, J.)).

The district court erred by relying on the above excerpt from *Williams* as a basis for rejecting the Florida Supreme Court's application of *Strickland* here for two reasons. First, the district court relies on an interpretation of AEDPA to which a majority of the U.S. Supreme Court has not subscribed.[15] Second, the district court overlooks that "an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (citing *Williams*, 529 U.S. at 411, 120 S. Ct. 1495 ("[A] federal habeas court may not issue the writ simply because that court concludes in its

---

[15]While Justice Stevens wrote one of the two majority opinions in *Williams*, this portion of his opinion was joined only by Justices Souter, Ginsburg, and Breyer. *Williams*, 529 U.S. at 367, 120 S. Ct. at 1499. Justices O'Connor and Kennedy, who composed the rest of Justice Stevens' majority, did not join this part of the opinion. *Id*.

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.")).

In overlooking that difference, the district court did not properly defer to the Florida Supreme Court's balancing of the aggravating and mitigating factors. The district court took out of context the state trial court's characterization of the previous conviction and burglary aggravating factors. The trial court had indeed called those factors "technical in nature" during Porter's sentencing. But it did so in the context of explaining why it did not impose the death penalty for Burrows' murder.[16] The trial court did not try to negate the heavy weight of those aggravating factors under Florida's statutory sentencing scheme.

The district court also did not properly defer to the Florida Supreme Court's adjudications and findings of fact. First, even if the district court correctly

---

[16]The state trial court found that the previous conviction and burglary aggravating factors applied in Burrows' murder. It found no mitigating factors. If the court had adopted the State's recommended "score card" approach, the "score" would have been 2-0, favoring the death penalty. The court then likely would have imposed the death penalty for Burrows' murder. The trial court noted during sentencing, however, that the Florida Supreme Court disapproved of that approach in *State v. Dixon*, 283 So. 2d 1 (Fla. 1973), *rev'd on other grounds*, *State v. Dene*, 533 So. 2d 265 (Fla. 1988). The *Dixon* court

> emphasized that the procedure to be followed by trial judges and juries is not a mere counting process as an X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.

*Id.* at 10. In refusing to apply the score card approach, the trial court imposed a life sentence for Burrows' murder.

asserted that Porter's sobriety at the time of the murders was not relevant to the balancing of the factors, that does not change Porter's failure to present "clear and convincing evidence" of his alcohol abuse. 28 U.S.C. § 2254(e)(1). Since Porter has not done so, we defer to the Florida Supreme Court's conclusion that the alcohol abuse mitigating factor does not apply here. *See Porter*, 788 So. 2d at 924.

Second, the district court noted that the record does not show how the mitigating effect of Porter's abusive childhood had become insignificant by the time of the murders. Nonetheless, the Florida Supreme Court's conclusion to that effect is reasonable, as it follows precedent. *See id.* (citing *Bolender*, 16 F.3d at 1561; *Francis v. Dugger*, 908 F.2d 696, 703 (11th Cir. 1990); *Bottoson v. State*, 674 So. 2d 621 (Fla. 1996) (per curiam)). We have in prior habeas cases deferred to the Florida Supreme Court's conclusion that, in light of the defendant's age at the time of the crime, this mitigating factor "is entitled to little if any, mitigating weight when compared to the aggravating factors." *Bolender*, 16 F.3d at 1561. We decide no differently here.

Third, the district court asserted that Porter's military history "cannot simply be ignored because in the view of the state court it may have been subject to impeachment." *Porter*, 2007 WL 1747316, at *30. In so asserting, the district court implies that the Florida Supreme Court applied *Strickland* incorrectly when

it adjudicated Porter's penalty phase claim. Even if the Florida Supreme Court had applied *Strickland* incorrectly, Porter must still show that the court's application was unreasonable or contrary to federal law or that the court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). He has not proved that it was unreasonable to conclude that his several periods of desertion would diminish the mitigating effect of military service. Accordingly, we defer to the Florida Supreme Court's conclusion that this mitigating factor would not have made a difference at sentencing. *See Porter*, 788 So. 2d at 925.

Finally, the district court erred by not properly deferring to the state post-conviction court's findings as to Porter's emotional and mental health. The expert witness for the state, Dr. Riebsame, testified that the methodology of the defense expert, Dr. Dee, was unreliable. The questionable accuracy of the test results and Porter's failure to manifest mental problems during his competency evaluations provided substantial evidence for the trial court to conclude that Porter was not suffering from a mental illness. Based on its factual finding, to which we defer, *see Bottoson*, 234 F.3d at 534, the state court reasonably concluded that counsel had no duty to further investigate Porter's mental health. *See Newland v. Hall*, 527 F.3d 1162, 1213 (11th Cir. 2008); *see, e.g.*, *Williams v. Head*, 185 F.3d 1223, 1239–40, 1244 (11th Cir. 1999).

In light of the foregoing, the Florida Supreme Court did not unreasonably balance the mitigating and aggravating factors. The Florida Supreme Court's adjudication as to Porter's penalty phase claims did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . . [Nor] was [it] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, we reverse the district court's grant of habeas relief as to Porter's penalty phase claim.

## IV. CONCLUSION

The district court erroneously granted habeas relief as to both claims of ineffective assistance of counsel. The court erred by basing on a new rule of law its grant of habeas relief as to Porter's competency hearing claim. The court also erred by not giving proper AEDPA deference to the Florida Supreme Court's adjudication and findings of fact relating to Porter's penalty phase claim. Accordingly, we reverse and enter judgment for the State.

**REVERSED.**

31