BARKETT, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s opinion except for its conclusion that counsel’s failure to investigate and present at sentencing the horrific details of Boyd’s background did not prejudice Boyd under Strickland. To demonstrate prejudice resulting from ineffective assistance of counsel,
a petitioner need not show that counsel’s deficient performance more likely than not altered the outcome of the case.... Rather, where, as here, a petitioner challenges a death sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
Putman v. Head, 268 F.3d 1223, 1248 (11th Cir.2001) (citing Strickland v. Washington, 466 U.S. 668, 693-695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Importantly, this court has held that in a jury override case, prejudice is “more easily shown.” Harich v. Wainwright, 813 F.2d 1082, 1093 n. 8 (11th Cir.1987), adopted by en banc court, 844 F.2d 1464, 1468-69 (11th Cir.1988) (en banc), overruling on other grounds recognized in Davis v. Singletary, 119 F.3d 1471, 1482 (11th Cir. 1997). On this record, where the trial judge overrode the jury’s recommendation of a life sentence, there is without question a “reasonable probability” that, had counsel presented the wealth of testimony adduced at Boyd’s state habeas proceedings regarding Boyd’s turbulent and abusive childhood, such evidence would have altered the balance of aggravating and mitigating factors relied upon by the trial judge in overriding the jury’s sentence.
In the recent case of Porter v. McCollum, 558 U.S.-, 130 S.Ct. 447, 454, — L.Ed.2d - (2009), the Supreme Court reversed this court’s judgment that, among other things, petitioner Porter had not established prejudice under Strickland arising out of his counsel’s failure to present evidence of his background to the jury or the trial court. In particular, the Court noted that neither the jury nor the trial judge had heard about:
(1) Porter’s heroic military service in two of the most critical-and horrific-battles of the Korean War, (2) his struggles to regain normality upon his return from war, (3) his childhood history of physical abuse, and (4) his brain abnormality, difficulty reading and writing, and limited schooling. See Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (“ ‘[EJvidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background ... may be less culpable’ ”).
*1314 The Court next noted that “[h]ad counsel been effective, the judge and jury would have learned of the kind of troubled history we have declared relevant to assessing a defendant’s moral culpability.” Id. (citation and quotation omitted). Finally, the Court concluded that “had the judge and jury been able to place Porter’s life history on the mitigating side of the scale and appropriately reduced the ballast on the aggravating side of the scale [based on the Florida Supreme Court’s subsequent conclusion that the heinous, atrocious, and cruel aggravator was inappropriate], there is clearly a reasonable probability that the advisory jury — and the sentencing judge— would have struck a different balance.” Id. At Porter’s sentencing, the trial judge had found no mitigating circumstances and three valid aggravating circumstances— one more than in Boyd’s case — including that Porter had killed in a cold, calculated and premeditated manner, see Porter v. Att’y Gen., 552 F.3d 1260, 1262 (11th Cir. 2008).
Although the majority in this case finds that the record is “mixed” with respect to some of the details of Boyd’s childhood abuse, poverty, and neglect, the record is clear that neither the jury nor the trial judge ever heard — and therefore had no opportunity to evaluate or consider — any of these details.[1] As in Porter, the trial court in Boyd’s case heard nothing about (1) the severe abuse endured by Boyd, his mother, and his sisters, including one mentally disabled sister, at the hands of their stepfather;[2] (2) the extreme poverty and neglect suffered by the children, which included rats and snakes crawling through their belongings and eating dirt for nutrients; (3) Boyd’s emotionally unstable mother, who was unable to care for or protect her children and who attempted suicide when Boyd was eleven; (4) Boyd’s alcoholic father destroying the house in a rage when he was home from prison, hitting his own parents, and abusing Boyd’s mother; and (5) Boyd’s alcoholic grandparents crawling through the house drunkenly on them knees, beating each other in front of the children, and endangering Boyd and his sisters’ lives by, among other things, forcing Boyd’s twelve-year-old sister to *1315 drive the family car with six-year-old Boyd in it.[3]
Had this evidence been introduced, it is reasonably probable that the sentencing judge — who found only two aggravating circumstances and also took into account as mitigating circumstances Boyd’s young age and the fact that he assisted law enforcement to some extent in locating the bodies — would have implemented the jury’s recommendation of life without paroled. I therefore respectfully dissent as to this issue.

. In an effort to minimize the impact of counsel's failure to present evidence of Boyd's troubled background, the majority emphasizes that some of the evidence regarding Boyd’s childhood is inconsistent. For example, the majority points out that while one expert testified that Boyd’s stepfather frequently hit Boyd on the head with a rifle butt, another expert referenced only one occasion in which he did so. However, the mere fact that one expert mentioned only one rifle incident is not inconsistent with, nor does it undermine, the totality of the evidence adduced ’ regarding the horrendous abuse inflicted upon Boyd and his sisters. Similarly, the majority notes that the abuse suffered by Boyd, estimated by his sister Cindy to have occurred about once a week, is not documented in any public records. However, I am aware of no requirement that testimony regarding abuse must be confirmed in public records before it may be weighed by a judge or jury. Moreover, as the Supreme Court recently pointed out, it is unreasonable to “discount entirely” mitigating evidence, simply because some of it might have been called into question. See Porter, 130 S.Ct. at 455 ("While the State’s experts identified perceived problems with the tests that [Porter's mental health expert] used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.”).

. I find little relevance to the fact that much of Boyd's stepfather's abuse was directed at Boyd’s sisters. Evidence of such severe abuse directed at his sisters is without a doubt relevant mitigating evidence with respect to Boyd himself. It simply strains credulity to suggest that a child is unaffected by his siblings' experiences. Cf. Porter, 130 S.Ct. at 449 (describing the abuse suffered by Porter, including that he "routinely witnessed his father beat his mother, one time so severely that she had to go to the hospital and lost a child”).

. A fair reading of this record belies the majority's assessment that much of the new mitigation evidence introduced at the post-conviction hearing “would simply have amplified the themes already raised at trial and incorporated into the sentencing judge's decision to override the jury.” That the jury learned that Boyd's grandparents were “drinkers’’ is a far cry from the unintroduced facts that they forced Boyd's twelve-year old sister to drive the family home from Florida to Alabama, with six year old Boyd beside her, they routinely beat each other in front of the children, crawled through the house on their knees drunkenly, or that his grandfather repeatedly set the house on fire. Nor do I agree that the jury's learning that Boyd's father was a “criminal who embarrassed the family” is “cumulative” of the unintroduced fact that Boyd's father was a violent alcoholic, who destroyed the house in a rage when he was home from prison and sometimes abused Boyd’s mother and his own parents. Finally, that the jury learned Boyd grew up in an impoverished setting pales in comparison to the unintroduced facts that rats and snakes crawled through the children's belongings, that the children ate dirt when there was not enough food, and that Boyd’s mother was unstable and unable to provide for her children, at one point attempting suicide when Boyd was eleven.