MARTIN, Circuit Judge,
concurring in the judgment in part and dissenting in part:
I would reverse the District Court’s denial of Mr. Ponticelli’s claim that he received ineffective assistance of counsel during the sentencing phase of his capital trial. In my judgment, the Florida Supreme Court’s decision rejecting this claim was an unreasonable application of the prejudice analysis required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Once the state court unreasonably applies Strickland, its analysis is not entitled to deference under 28 U.S.C. § 2254(d). Having conducted a de novo review, I conclude that Mr. Ponticelli has demonstrated “there is a reasonable probability that, absent [counsel’s deficient performance], the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. at 2069.
Judge Pryor’s opinion accepts the Florida Supreme Court’s holding that Mr. Ponticelli’s trial counsel’s investigation for and presentation of the penalty phase of the trial were deficient. And it bears noting that the state court record fully and clearly supports the conclusion that counsel’s performance was constitutionally deficient. As the Florida Supreme Court explained:
[Counsel’s penalty phase investigation consisted of interviewing Ponticelli’s parents and asking Dr. Mills to testify. Counsel apparently failed to contact the persons suggested by Ponticelli’s parents, made no effort to obtain any of Ponticelli’s school or medical records, and did not request that Dr. Mills evaluate Ponticelli again before testifying at the penalty phase. While we recognize that a mental health evaluation is not required in every case, the record shows that Dr. Mills’fs] penalty phase testimony was based on the fifteen-minute evaluation he conducted on Ponticelli before the competency hearing and his review of the record ....
Counsel’s stated reason for not investigating this potential mitigation was that he did not know how to conduct a penalty phase. Inexperience is not an excuse for deficient performance .... Defense counsel’s failure to conduct an adequate investigation resulted in a deficient penalty phase presentation. He presented only one witness at the penalty phase and asked this witness to base his testimony on a hypothetical that was not entirely accurate. We agree with Ponticelli that counsel’s penalty phase investigation and presentation were deficient.
Ponticelli v. State, 941 So.2d 1073, 1095-96 (Fla.2006) (Ponticelli III) (footnotes and citations omitted). This conclusion was compelled by what was then, and continues to be, clearly established federal law. See Williams v. Taylor, 529 U.S. 362, 368-70, 395-96, 120 S.Ct. 1495, 1500-01, 1514-15, 146 L.Ed.2d 389 (2000) (finding counsel performed deficiently by failing to conduct constitutionally adequate penalty phase investigation in 1986 trial); see also Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 448-49, 452-53, 175 L.Ed.2d 398 (2009) (same as to 1988 trial); Rompilla v. Beard, 545 U.S. 374, 381-90, 125 S.Ct. 2456, 2462-67, 162 L.Ed.2d 360 (2005) (same).
Proceeding from the finding regarding trial counsel’s deficient performance, Strickland requires an analysis of whether Mr. Ponticelli was prejudiced by this deficiency. And on the issue of whether the Florida Supreme Court’s adjudication of Strickland’s prejudice prong involved an unreasonable application of federal law, I have arrived at a conclusion different from that of my colleagues. My conclusion is *1304 that the Florida Supreme Court unreasonably applied Strickland within the meaning of § 2254(d)(1). The United States Supreme Court’s decisions in Williams and Porter compel me to this conclusion in three different ways.
First, the Florida Supreme Court’s prejudice analysis under Strickland was an unreasonable application of clearly established federal law for the same reason articulated by the Supreme Court in Williams: the state court “failed to accord appropriate weight to the [whole] body of mitigating evidence [that would have been] available to trial counsel” in its reweighing analysis. 529 U.S. at 398, 120 S.Ct. at 1516. More specifically, in Williams the Supreme Court found the Virginia Supreme Court’s “prejudice determination was unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation.” Id. at 397-98, 120 S.Ct. at 1515 (citing Clemons v. Mississippi, 494 U.S. 738, 751-52, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990)). The Supreme Court said the error was “apparent in [the Virginia Supreme Court’s] consideration of the additional mitigation evidence developed in the postconviction proceeding.” Id. at 398, 120 S.Ct. at 1515. Although the Virginia Supreme Court correctly considered the new evidence adduced in the state post-conviction hearing and the strength of the prosecution’s evidence of aggravation, it failed to consider the mitigation from the original penalty phase and reweigh it together with the postconviction evidence. Id. This being the case, the United States Supreme Court concluded that the Virginia Supreme Court unreasonably applied Strickland’s prejudice analysis when it “failed to accord appropriate weight to the [whole] body of mitigating evidence [that would have been] available to trial counsel.” Id.
The Florida Supreme Court committed the same error in Mr. Ponticelli’s case. The same as in Williams, the state court here did not evaluate the totality of Mr. Ponticelli’s mitigating evidence insofar as its prejudice analysis did not even mention the statutory mitigation that was found to exist at the original trial. See Ponticelli III, 941 So.2d at 1092-99. During the penalty phase of Mr. Ponticelli’s jury trial, the trial court found two statutory mitigating circumstances: (1) he has no significant history of prior criminal activity, see Fla. Stat. § 921.141(6)(a); and (2) he was twenty years old at the time of the offense, see id. § 921.141(6)(g). The Florida Legislature’s affirmative inclusion of age and lack of criminal history among its eight statutory mitigating circumstances, see id. § 921.141(6)(a)-(h), together with the sentencing court’s finding that these mitigators applied, establish that these aspects of Mr. Ponticelli’s background and character are mitigating as a matter of state law. Even if that were not the case, the trial court’s findings regarding Mr. Ponticelli’s age and lack of criminal history would still be constitutionally relevant mitigating circumstances which, either alone or together, could serve “as a basis for a sentence less than death.” Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion); see also Jackson v. State, 599 So.2d 103, 110 (Fla.1992) (recognizing defendant’s lack of significant history of prior criminal activity, coupled with other mitigation, may clearly serve as a reasonable basis for a jury’s life recommendation).[1]
*1305 The second way in which I believe there was an unreasonable application of Strickland, is because of the piecemeal manner in which the Florida Supreme Court weighed Mr. Ponticelli’s postconviction mitigation evidence. This is demonstrated by the state court’s opinion which plainly measured the mitigating evidence presented during the postconviction hearing against the aggravating evidence in a fragmented fashion. See Ponticelli III, 941 So.2d at 1096-99. The Florida Supreme Court’s prejudice analysis grouped the postconviction evidence into two categories: (1) “lay witness testimony,” id. at 1097; and (2) “mental health testimony,” id. at 1098. The court then weighed each category of evidence separately against the evidence in aggravation. See id. at 1097 (“The lay witness testimony presented at the evidentiary hearing is certainly not sufficient to establish mitigators that outweigh these aggravators.”); id. at 1098 (“[Neither Dr. Crown’s nor Dr. Herkov’s testimony was sufficient to establish mental health mitigation which would, in all reasonable probability, have outweighed the significant aggravators in this case.”).
What the Florida Supreme Court was required to do under Williams was consider the lay witness and mental health evidence together, along with the original evidence presented during the penalty phase of the jury trial, then reweigh all of it against all the evidence in aggravation. Again, to properly evaluate Strickland prejudice, reviewing courts must “consider ‘the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding’ — and ‘reweig[h] it against the evidence in aggravation.’ ” Porter, 130 S.Ct. at 453-54 (quoting Williams, 529 U.S. at 397-98, 120 S.Ct. at 1515) (emphasis added). By “totality of the available mitigation evidence,” the Supreme Court meant the evidence as a whole. See Williams, 529 U.S. at 398-99, 120 S.Ct. at 1516 (“In our judgment, the state trial judge was correct ... in his conclusion that the entire postconviction record, viewed as a whole and cumulative of mitigation evidence presented originally, raised a reasonable probability that the result of the sentencing proceeding would have been different .... ” (quotation marks omitted) (emphasis added)). Thus, by using a truncated reweighing analysis even for the mitigating evidence it did consider, the state court unreasonably applied clearly established federal law. See id. at 397-98, 120 S.Ct. at 1515.
Third, the Florida Supreme Court unreasonably applied Strickland when it repeated the same errors in Mr. Ponticelli’s case that the Supreme Court condemned in Porter. The Supreme Court explained its reasoning as follows:
The Florida Supreme Court’s decision that Porter was not prejudiced by his counsel’s failure to conduct a thorough— or even cursory — investigation is unreasonable. The Florida Supreme Court either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing. Under Florida law, mental health evidence that does not rise to the level of establishing a statutory mitigating circumstance may nonetheless be considered by the sentencing judge and jury as mitigating. Indeed, the Constitution *1306 requires that “the sentencer in capital cases must be permitted to consider any relevant mitigating factor.” Yet neither the postconviction trial court nor the Florida Supreme Court gave any consideration for the purpose of nonstatutory mitigation to [the defense expert’s] testimony regarding the existence of a brain abnormality and cognitive defects. While the State’s experts identified perceived problems with the tests that [the defense expert] used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.
130 S.Ct. at 454-55 (emphasis added) (footnotes and citations omitted). Here, like in Porter, the Florida Supreme Court either “did not consider or unreasonably discounted” Mr. Ponticelli’s constitutionally relevant mitigating evidence. Id. at 454. This is true for both the statutory and the non-statutory mitigation Mr. Ponticelli presented during the postconviction hearing, including: his brain damage; cognitive deficits; drug use at the time of the offense; and statutory mental health mitigating circumstances. See Ponticelli III, 941 So.2d at 1097-99. By refusing to conclude the Florida Supreme Court’s prejudice analysis was not an unreasonable application of Strickland, this Court repeats the same error it committed in Porter v. Attorney General, 552 F.3d 1260, 1272-75 (11th Cir.2008), when it did not find anything unreasonable about the Florida Supreme Court’s decision in Porter v. State, 788 So.2d 917 (Fla.2001).
Because the Florida Supreme Court clearly failed to put all of the mitigating evidence from the jury trial penalty phase into the “hopper” with all the mitigation that came to light after Mr. Ponticelli’s trial and then reweigh it against the evidence in aggravation, it unreasonably applied Strickland’s prejudice analysis. Thus, its adjudication of Mr. Ponticelli’s claim of Strickland prejudice at the penalty phase is not entitled to any deference under AEDPA. See Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007) (“When a state court’s adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires.”).
In light of the state court’s unreasonable application of federal law, Mr. Ponticelli is entitled to de novo review of the record with respect to prejudice under Strickland. See McGahee v. Ala. Dep’t of Corr., 560 F.3d 1252, 1266 (11th Cir.2009). On this issue, I do not agree with Judge Pryor’s conclusion that the evidence presented during the state evidentiary hearing was cumulative to the scant evidence that was presented at trial. My review of the record tells me that the judge and jury during the sentencing of Mr. Ponticelli’s trial heard very little evidence supporting his trial counsel’s efforts to humanize him or that would allow them to more accurately gauge his moral culpability. Thus, the picture that the judge and the jury would have seen had counsel not been deficient is very different.
During the penalty phase, Mr. Ponticelli’s trial counsel presented only the testimony of Dr. Mills, given in the form of a hypothetical. Dr. Mills testified that (1) Mr. Ponticelli’s behavior and the changes in his personality shortly before, during, and after the offense were consistent with cocaine addiction; (2) Mr. Ponticelli was suffering from an extreme mental or emotional disturbance because of his repeated cocaine use around the time of the offense, see Fla. Stat. § 921.141(6)(b); and (3) Mr. Ponticelli’s capacity to appreciate the criminality of his conduct was substantially impaired, see id. § 921.141(6)(f).
*1307 The force of this testimony was significantly limited, however, because of the cursory nature of Dr. Mills’s evaluation. Dr. Mills only interviewed Mr. Ponticelli one time for fifteen minutes, and that was before trial and for the limited purpose of a court-ordered competency and sanity evaluation. Trial counsel did not request that Dr. Mills evaluate Mr. Ponticelli again before his penalty phase testimony. Indeed, the Florida Supreme Court emphasized these facts in support of its conclusion that trial counsel was deficient. See Ponticelli III, 941 So.2d at 1095-96 & n. 24 (citing Arbelaez v. State, 898 So.2d 25, 34-35 (Fla.2005), for the proposition that trial counsel should not have considered Dr. Mills’s fifteen-minute interview “a reliable substitute for a thorough mitigation investigation”).
Further, while trial counsel attempted to integrate some of the evidence presented during the trial into the hypothetical posed to Dr. Mills, because of counsel’s constitutionally inadequate investigation into Mr. Ponticelli’s background, Dr. Mills testified to a hypothetical that was not factually accurate. As the state court noted, “[trial counsel] asked Dr. Mills to assume that Ponticelli had no history of cocaine abuse until Ponticelli returned from his visit to New York in October 1987. [But] the unrefuted testimony at the evidentiary hearing revealed that Ponticelli was heavily abusing cocaine by the age of sixteen.” Ponticelli III, 941 So.2d at 1096 n. 25. The hypothetical was undoubtably wrong about the length and severity of Mr. Ponticelli’s drug addiction. Of more pressing concern, however, is that the hypothetical did not reference Mr. Ponticelli’s drug use as witnessed on the day of the offense by Tim Keesee, and as also recognized that day by Frank Porcillo. As a result, during penalty phase closing arguments, the prosecutor told the jury that while Mr. Ponticelli used “a lot” of cocaine, “there was no evidence at all during the trial that he had used cocaine [the day of the offense]; none whatsoever.”[2]
*1308 At the conclusion of the sentencing phase of the jury trial, “the trial court did not find -either statutory mental health mitigator[s] because it found that, given the lack of evidence supporting Ponticelli’s cocaine use within twenty-four hours of the crime, [Dr.] Millsfs] testimony was speculative.” Ponticelli III, 941 So.2d at 1093. The lack of evidence of Mr. Ponticelli’s cocaine use is not surprising in that Dr. Mills had not interviewed Mr. Ponticelli for the purpose of investigating or developing potential mitigation and neither had Dr. Mills been exposed to evidence such as Tim Keesee’s and Frank Porcillo’s eyewitness accounts of, respectively, Ponticelli’s drug use and intoxication around the time of the offense. Given the unsubstantiated and incomplete nature of Dr. Mills’s hypothetical testimony, neither the jury nor the judge had a basis for finding the statutory mental state mitigating circumstances.
By contrast, the postconviction evidence painted a- starkly different portrait of Mr. Ponticelli than that presented during his jury trial. The postconviction evidence included Mr. Ponticelli’s early childhood difficulties, together with the fact that he had been born a “blue baby” which likely resulted in brain damage. Mr. Ponticelli was placed in foster care when he was only just months old. Mr. Ponticelli began abusing drugs as a youth.[3] These early childhood difficulties, which the jury never heard anything about, represent the “kind of troubled history [the Supreme Court has] declared relevant to assessing a defendant’s moral culpability.” See Wiggins v. Smith, 539 U.S. 510, 535, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).
This postconviction mitigating evidence has particular significance here, first because it is constitutionally relevant evidence. See Roper, 543 U.S. at 568, 125 S.Ct. at 1194, 161 L.Ed.2d 1 (2005) (“In any capital case a defendant has wide latitude to raise as a mitigating factor any aspect of his or her character or record .... ” (quotation marks and alterations omitted)). Second, it is significant because it supports the existence of two mental state statutory mitigating circumstances under Florida law. See Fla. Stat. § 921.141(6)(b), (f). In his postconviction proceedings, Mr. Ponticelli presented the testimony of three experts who agreed that his cocaine use on the day of the offense, coupled with his lengthy and severe history of cocaine addiction, supported a conclusion that he was under an extreme emotional disturbance at the time of the crime. See Ponticelli III, 941 So.2d at 1093. The three experts also agreed that this evidence showed Mr. Ponticelli’s ability to appreciate the criminality of his conduct or conform his conduct to the re *1309 quirements of law was substantially impaired. See id.
While it is certainly true that the state’s mental health expert Dr. Conger disagreed,[4] it is not the job of this Court to resolve disputes in the evidence. Our job is to determine whether there is a reasonable probability that the testimony of Mr. Ponticelli’s experts would have affected the jurors’ appraisal of his moral culpability. In my view there is. For one thing, the opinions of Mr. Ponticelli’s experts do not suffer from the same infirmities as Dr. Mills’s testimony. Unlike Dr. Mills, who testified to a factually inaccurate hypothetical based upon a constitutionally inadequate background investigation, the opinions of the experts who testified in postconviction proceedings were substantiated and corroborated by extensive evidence, including evidence of Mr. Ponticelli’s drug use on the day of the offense.
I am certainly aware that not all of the posteonvietion evidence presented was favorable to Mr. Ponticelli. For example, as Judge Pryor suggests, trial counsel’s portrayal of Mr. Ponticelli as a naive drug user during the penalty phase may be more sympathetic than the reality that he had a longstanding drug addiction and relapsed only weeks prior to the offense.[5] Although I recognize the force of this argument, the positives and negatives of this aspect of Mr. Ponticelli’s background do not foreclose a finding of Strickland prejudice. The Supreme Court has found prejudice in several cases where the evidence had both good and bad properties. See Porter, 130 S.Ct. at 455 (holding that the habeas petitioner was prejudiced by his counsel’s failure to present evidence of his military service even though such evidence would have also shown that he “went AWOL on more than one occasion”); Williams, 529 U.S. at 396, 120 S.Ct. at 1514 (holding that defense counsel’s failure to present juvenile records involving child abuse, mental capacity, and incarceration was deficient, even though “not all the additional evidence was favorable to” the petitioner); id. at 398-99, 120 S.Ct. at 1515-16 (holding that the state trial judge had correctly found prejudice from the failure to introduce the juvenile records); cf. Sears v. Upton, — U.S.-, 130 S.Ct. 3259, 3264, 177 L.Ed.2d 1025 (2010) (stating “the fact that along with this new mitigation evidence there was also some adverse evidence is unsurprising ... given that counsel’s initial mitigation investigation was constitutionally inadequate. Competent counsel should have been able to turn some of the adverse evidence into a positive ----”); Rompilla, 545 U.S. at 390-93, 125 S.Ct. at 2467-69 (holding that habeas petitioner was prejudiced by the failure of his defense counsel to examine and present evidence from the records of his prior conviction). With this in mind, I say Mr. Ponticelli’s relapse does not vitiate the conclusion that he has shown prejudice based upon the record in his case.
*1310 For example, the fact of a relapse and prejudice are not mutually exclusive in light of the early onset of Mr. Ponticellfs drug addiction, as well as the reality that people who suffer from drug addiction sometimes succumb to their addiction and relapse. See, e.g., Cooper v. Sec’y, Dep’t of Corr., 646 F.3d 1328, 1355 n. 20 (11th Cir.2011) (“We acknowledge that evidence of alcoholism and drug abuse is often a two-edged sword which can harm a capital defendant as easily as it can help him at sentencing. However, we credit [the defendant’s] evidence of alcohol abuse beginning at age 11 as mitigation, as it was used as a way to escape his horrible background.” (quotation marks and citation omitted)); cf. Roper, 543 U.S. at 569-70, 125 S.Ct. at 1195-96 (recognizing, generally, the differences between juvenile and adult offenders in terms of moral culpability); id. at 570, 125 S.Ct. at 1195 (“The susceptibility of juveniles to immature and irresponsible behavior means ‘their irresponsible conduct is not as morally reprehensible as that of an adult.’ ” (quoting Thompson v. Oklahoma, 487 U.S. 815, 835, 108 S.Ct. 2687, 2699, 101 L.Ed.2d 702 (1988) (plurality opinion))).
On the aggravation side of the ledger, the jury recommended death by a vote of nine to three for the murders of both Nick and Ralph Grandinetti. The trial court found two aggravating factors applied to the murder of each man: (1) the homicides were committed for pecuniary gain, see Fla. Stat. § 921.14:l(5)(f); and (2) the homicides were “committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification,” which is referred to as the CCP aggravator, see id. § 921.141(5)(i). The trial court also found that Nick Grandinetti’s murder was “especially heinous, atrocious, or cruel,” a factor often referred to as the HAC aggravator. Id. § 921.141(5)(h). The CCP and HAC aggravators have been recognized as “two of the most serious aggravators set out in [Florida’s] statutory sentencing scheme.” Larkins v. State, 739 So.2d 90, 95 (Fla. 1999). But together with the mitigating evidence never heard by them, the judge and jury may have evaluated the CCP factor differently. They may have given it different weight to the extent that the additional mitigating evidence substantiated Mr. Ponticelli’s claim that he met the criteria for Florida’s statutory mental health mitigators.
In sum, I conclude that had the judge and jury been able to consider Mr. Ponticelli’s life history and drug use at the time of the offense, together with his young age and lack of criminal history, on the mitigating side of the scale, and reduce the strength of the CCP aggravating factor on the other side of the scale, there is a reasonable probability that the sentencing judge and jury “would have struck a different balance.” Wiggins, 539 U.S. at 537, 123 S.Ct. at 2543; see also Porter, 130 S.Ct. at 454. Even without the new and compelling evidence presented at the post-conviction hearing, three of Mr. Ponticelli’s original jurors voted for life based upon nothing more than two statutory mitigating circumstances, his youth and lack of criminal history. Had his jury been presented with the considerable mitigating evidence adduced during the postconviction proceedings — including the corroborated opinions of three mental health experts as to the existence of Florida’s statutory mental health mitigators, coupled with the two strong statutory mitigating circumstances already found by the sentencing court — '“there is a reasonable probability that it would have returned with a different sentence.” Wiggins, 539 U.S. at 536, 123 S.Ct. at 2543. Although we cannot be completely certain that the outcome would have been different, Strickland does not require that of us. See 466 U.S. at 693, 104 S.Ct. at 2068 (stating that, to show *1311 prejudice, “a defendant need not show that counsel’s deficient conduct more likely than not altered the outcome in the case”). Rather, a defendant need only demonstrate a reasonable probability of a different outcome. Id. at 694, 104 S.Ct. at 2068. For these reasons, I would grant Mr. Ponticelli habeas relief as to his claim of ineffective assistance of counsel at the penalty phase of his trial, and I respectfully dissent from the denial of this relief.

. It is black letter Constitutional law that states must allow judges and juries in capital cases to hear, consider, and give full effect to all relevant mitigating evidence. See Roper v. Simmons, 543 U.S. 551, 568, 125 S.Ct. 1183, 1194, 161 L.Ed.2d 1 (2005) (defendant must *1305 be afforded "wide latitude" to present mitigating evidence); see also Abdul-Kabir v. Quarterman, 550 U.S. 233, 264, 127 S.Ct. 1654, 1675, 167 L.Ed.2d 585 (2007) (statutory requirements that jury consider only particular kinds of mitigating evidence are unconstitutional); Brewer v. Quarterman, 550 U.S. 286, 289, 127 S.Ct. 1706, 1710, 167 L.Ed.2d 622 (2007) (sentencer may not be precluded from "giving meaningful effect to mitigating evidence”); Lockett, 438 U.S. at 604, 98 S.Ct. at 2964-65 (plurality opinion) (sentencer cannot be precluded from considering character or circumstances of defendant’s record).

. There was no evidence of Mr. Ponticelli’s drug use at the time of the offense in part due to the state’s suppression of this evidence. While I agree that Mr. Ponticelli has not demonstrated a Brady or Giglio violation with respect to his convictions, I arrive at my conclusion by a different route than Judge Pryor. In my view, Mr. Ponticelli's Brady and Giglio claims should be denied with regard to his convictions not because he has failed to establish that evidence of his intoxication was suppressed, but because he has not demonstrated prejudice as to his convictions. Regardless of the state trial court’s credibility findings as to the defense counsel’s and the prosecutor’s conflicting testimony about the prosecutor's notes, Tim Keesee testified in the postconviction hearing that his trial testimony was false; that he had seen Mr. Ponticelli use cocaine at the Grandinettis’ trailer on the evening of the homicides; and that he told the state’s investigator Bruce Munster this. See Ponticelli III, 941 So.2d at 1089. Detective Munster corroborated Keesee’s testimony on this point during his postconviction testimony. Thus, regardless of the prosecutor’s notes and testimony, ignoring this unrebutted evidence that Detective Munster, whose knowledge is charged to the prosecution, knew that Keesee’s testimony was false renders the state’s factual determination unreasonable. See id. at 1090.
While I conclude that Mr. Ponticelli was not prejudiced by this suppression of evidence on the question of his guilt or innocence, I cannot say the same with regard to the sentence of death. For me, the materiality of the Brady and Giglio violations with respect to Mr. Ponticelli’s death sentence is plain because the evidence relates to his drug use on the day of the offense. This is consistent with what the Supreme Court has recognized: this kind of evidence may be material to a capital jury's penalty phase deliberations. See Cone v. Bell, 556 U.S. 449, 470-75, 129 S.Ct. 1769, 1783-86, 173 L.Ed.2d 701 (2009). Here, Mr. Ponticelli’s drug use on the day of the offense was disputed by the state during the penalty phase. Although the defense attempted to elicit testimony and argue that Mr. Ponticelli’s paranoid behavior demonstrated he was *1308 impaired by drug use near the time of the offense, the state implored the jury to infer that Mr. Ponticelli’s behavior was attributable to his criminal activity. Indeed, the materiality of this evidence is further established by the Florida Supreme Court’s direct appeal opinion affirming the trial court’s determination that Mr. Ponticelli failed to prove the existence of statutory mitigating circumstances in part because there was no evidence presented at Mr. Ponticelli’s jury trial that he was using cocaine on the evening of the murders. See Ponticelli v. State, 593 So.2d 483, 490-491 (Fla. 1991) (Ponticelli I), vacated and remanded sub nom. Ponticelli v. Florida, 506 U.S. 802, 113 S.Ct. 32, 121 L.Ed.2d 5 (1992) (remanding for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992)), remanded to Ponticelli v. State, 618 So.2d 154 (Fla.1993) (Ponticelli II) (affirming convictions and sentence).

. At the state court postconviction hearing, witnesses testified that Mr. Ponticelli began using marijuana and alcohol in junior high school, sometime between the ages of thirteen, fourteen, and fifteen years old, and then continued and increased his drug use in high school to more serious drugs, such as black beauties, mescaline, hashish, Valium, and cocaine.

. Dr. Conger opined that Mr. Ponticelli's mental state at the time of the offense did not rise to the level to support statutory mitigators. Nevertheless, Dr. Conger agreed on cross-examination that the "record would certainly suggest” that Mr. Ponticelli "was not a cold-blooded murderer, and he was highly stressed during and after the homicides.”

. Dr. Conger suggested that Mr. Ponticelli may have an antisocial personality disorder based upon one personality test administered by him, but he did not diagnose Mr. Ponticelli with this disorder. Even if we were to assume that Dr. Conger had determined that Mr. Ponticelli met all of the diagnostic criteria for antisocial personality disorder, such a diagnosis, although harmful, does not preclude a conclusion of prejudice. See Cooper v. Secy, Dep’t of Corr., 646 F.3d 1328, 1340, 1353-56 (11th Cir.2011) (granting habeas corpus relief based upon ineffective assistance of counsel at penalty phase even though defendant’s own psychologist diagnosed the defendant with antisocial personality disorder).